ZOUHEIR HAMADE                                                                                    PLAINTIFF

v.

VALIANT GOVERNMENT SERVICES, LLC                                        DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court upon a motion by Defendant, Valiant Government Services, LLC ("Valiant"), to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as to all claims of Plaintiff Zouheir Hamade ("Hamade"). [DN 6; DN 7]. Plaintiff has responded, [DN 9], and Defendant has filed a reply. [DN 11]. Fully briefed, Defendant's motion is ripe for review, and for the following reasons, it is **GRANTED.**

### BACKGROUND

The factual allegations as set out in the Complaint, [DN 1], and taken as true are as follows.[1] In July 2017 Hamade was hired by Valiant as a full-time Arabic-Iraqi linguist in Iraq. [DN 1 at 2-3]. While working in Iraq, Hamade was approached by a female linguist who worked for another government contractor. [DN 1 at 3]. The female linguist informed Hamade that she had been sexually assaulted and asked Hamade to help her find the proper authority. [*Id.*]. Hamade agreed to accompany the female linguist to the "Mayor Cell" to locate the offices of the Army Sexual Harassment/Assault Response and Prevention ("SHARP"). [*Id.*]. While traveling to the Mayor Cell, Hamade and the female linguist were confronted by Sergeant Major Goodman ("Goodman").

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

[*Id.*]. Goodman questioned Hamade and the female linguist regarding the purpose of their visit to the Mayor Cell. [*Id.*]. During the confrontation, Hamade learned that Goodman was the officer who allegedly assaulted the female linguist. [*Id.* at 4]. The female linguist informed Goodman that she was traveling to the Mayor Cell to report harassment, bullying, and retaliation against her. [*Id.* at 4].

The female linguist's answer angered Goodman, who then demanded to see Hamade's identification. [*Id.*]. Hamade refused to give his identification to Goodman, instead stating that he would only give his identification to a higher authority than Goodman. [*Id.*]. Goodman "continued to bully and pressure" Hamade and the female linguist, raising his voice and drawing a crowd. [*Id.*]. Hamade reached out to a First Lieutenant in the crowd and presented the Lieutenant with his identification. [*Id.*]. The Lieutenant, with the help of Major Dam, deescalated the situation and listened to the female linguist explain what had occurred. [*Id.*]. Major Dam then accompanied Hamade and the Female Linguist to the office of Colonel Thomas Shuler, where Hamade and the female linguist were advised to make an appointment for the next day. [*Id.*]. The next day, Hamade and the female linguist met with Colonel Shuler to discuss the alleged sexual assault and the identification withholding situation that had occurred the night before, and Hamade's concerns of retaliation from Goodman. [*Id.* at 5].

The next day, Hamade learned that Sergeant Goodman complained to Valiant and made a recommendation for Valiant to terminate Hamade for withholding his identification. [*Id.*]. Hamade met with Colonel Shuler two days later to notify Shuler of Goodman's complaint and recommendation for termination. [*Id.* at 6]. Colonel Shuler assured Hamade that no adverse action would be taken against him and promised to provide Hamade with a "closure statement" within the next two days which would assure him in writing that no retaliation would occur. [*Id.*]. Hamade

waited for the closure statement for two weeks before sending Shuler an email reminding the Colonel of his promise. [*Id.*].

The day after he emailed Colonel Shuler, Hamade received a letter of reprimand from Valiant stating that the U.S. Army had filed a "complaint" against him because Hamade had requested a written statement from Colonel Shuler. [*Id.*]. Lawrence Butala, Valiant's site lead, told Hamade that it was not a good time for Valiant employees to raise issues with the U.S. Army since the company's contract was under rebidding and an issue like Hamade's could cause Valiant to lose its contract. [*Id.* at 7]. Following the complaint, Hamade's unit was given orders to watch Hamade's performance. [*Id.*]. Thereafter formal statements appeared in Hamade's file relating to living conditions and other petty and non-performance concerns. [*Id.*]. During the days following his reprimand, Hamade was repeatedly approached by a soldier, Hamza Waheed, who said he heard Hamade was "leaving" each time he spoke with Hamade. [*Id.*].

Hamade was first informed that he was being terminated on January 7, 2018. [*Id.*]. Hamade was informed that he was being terminated for upsetting an Iraqi General Officer by asking the Iraqi General to "switch seating" with another officer. [*Id.*]. When Hamade confronted the General about his termination, the General was "astonished by the news of the alleged complaint and vehemently denied having complained to anyone at any time about Plaintiff Hamade" and that someone must have misinterpreted their jokes regarding the seating arrangement. [*Id.*]. The Iraqi General and his NOC Commander, General Khalaf, submitted written statements that no such incident happened and no complaint was ever made. [*Id.*].

Some time later, the site manager of Valiant told Hamade that he had not been terminated because of the chair incident but instead for "re-opening the case" regarding the sexual assault allegations against Sergeant Major Goodman. [*Id.*]. On January 11, 2018, Valiant's deputy

3

program manager informed Hamade that the main reason for his termination was because he "refused to provide his identification" to Sergeant Goodman and because he assisted the female linguist in reporting the sexual harassment by Goodman. [*Id.* at 9]. On January 15, 208, Hamade filed a complaint with "IG"[2] in Iraq. [*Id.* at 10]. Captain Sommer, the Brigade Attorney, notified Valiant of the IG complaint. Two days after Hamade filed the IG complaint, Valiant's program director in Iraq informed Hamade that he was being terminated "at will" and would be redeploying soon and the site manager handed Hamade a written reprimand that said Hamade was being disciplined because he had been too friendly to the Iraqi officers he worked with on a daily basis. [*Id.*].

Several months after his termination, Hamade filed a charge with the Equal Employment Opportunity Commission ("EEOC").[3] On August 3, 2018, the EEOC dismissed the charged and issued a "Notice of Suit Rights." [DN 1-1]. Hamade filed his complaint that is now before this Court on November 11, 2018. Valiant argues that Hamade's complaint must be dismissed because he has failed to plead facts showing that he engaged in a protected activity under Title VII of the Civil Rights Act of 1964 ("Title VII") or the Kentucky Civil Rights Act ("KCRA") and that the KCRA does not apply in this case because it is not extraterritorial in scope. For the following reasons, Valiant's motion to dismiss is **GRANTED.**

## LEGAL STANDARD

In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d

---

[2] Hamade does not explain what "IG" is but it appears most likely to the Court that "IG" is an acronym for the Inspector General of the Army.

[3] *See* DN 11 at 2, n. 1. "Plaintiff's EEOC charge cannot serve as the necessary Title VII proceeding as it was not filed until nearly four months after he was terminated." [*See* Hamade's EEOC Charge, DN 11-1].

471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Civil Rule 12(b)(6), a party must "plead enough factual matter to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677-79).

## DISCUSSION

### I. Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e, *et seq*).

Title VII prohibits discriminating against an employee because that employee engaged in conduct protected by Title VII. To establish a prima facie case of retaliation, the plaintiff must show: "(1) [he] engaged in a 'protected activity' within the meaning of Title VII; (2) the employer knew of such activity; (3) the employer thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Davis v. Rich Prods. Corp.*, 11 F.App'x 441, 444 (6th Cir.

2001). Valiant alleges that Hamade has failed to plead facts sufficient to establish that he engaged in a "protected activity" under Title VII.

Under Title VII, a plaintiff has engaged in a protected activity if he has either: (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Put differently, "[u]nder Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)).

Hamade fails to plead facts to state a claim upon which relief can be granted under either the opposition clause or the participation clause. In his response, Hamade concedes that he has failed to state a claim under the opposition clause. [DN 9 at 3]. Hamade claims, however, that he engaged in a protected activity because he "made a charge, testified, assisted, or participated in an investigation" by assisting the female linguist in reporting the alleged sexual assault to the offices of SHARP and then continuing to assist in the U.S. Army's internal investigation. [DN 9 at 3 – 9]. But, as Valiant identifies, Hamade's complaint does not allege that an EEOC proceeding was pending at the time he participated in the U.S. Army's internal investigation. [DN 11 at 2].

"[T]he Sixth Circuit has limited protected activity under the participation clause to the internal investigations pursuant to a pending EEOC charge." *Semien v. Packaging Unlimited, LLC*, No. 3:12-CV-00643-H, 2014 WL 350868, *3 (W.D. Ky. July 14, 2014) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 211 Fed. Appx. 373, 376 (6th Cir. 2006)); *See also Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003). Hamade does not allege that

the female linguist filed an EEOC charge. [*See* DN 9; DN 1]. And Hamade did not file his EEOC charge until after he was terminated.[4] [*See* DN 11-1; DN 11 at 2]. Because Hamade does not allege that an EEOC charge was pending during his participation in the internal investigation, he does not state a claim upon which relief can be granted under the participation clause. Furthermore, Hamade concedes that he does not state a claim upon which relief can be granted under the opposition clause. [DN 9 at 3]. For the foregoing reasons, Valiant's motion to dismiss is **GRANTED.**

## II.    Kentucky Civil Rights Act (Ky. Rev. Stat. § 344.280).

Hamade also claims that he was subjected to retaliatory harassment and adverse employment action in violation of the Kentucky Civil Rights Act. Specifically, Hamade alleges that Valiant violated KRS § 344.280 which states in relevant part: "It shall be an unlawful practice for a person. . . (1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, or participated in any manner in any investigation, proceeding, or hearing under this chapter. . . ." Whether Hamade engaged in a "protected activity" is the first element of a *prima facie* action of unlawful retaliation under the Kentucky Civil Rights Act. *Brooks v. Lexington-Fayette Urban County Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). Unlawful retaliation under the KCRA is interpreted consistently with retaliation under federal law. *Id.* at 802. KRS § 344.28, like Title VII, consists of an Opposition Clause and a Participation Clause. "The [Opposition Clause] concerns perceived violations of the KCRA. The [Participation Clause]

---

[4] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

deals with participation in an investigation or other proceeding under the KCRA." *Williams v. City of Glasgow*, No. 2017-CA-001246-MR, 2018 WL 3794739, *3 (Ky. Ct. App. Aug. 10, 2018). Hamade concedes that he is not entitled to statutory protection under the opposition clause. [DN 9 at 3].

Valiant argues that Hamade does not have a claim upon which relief can be granted because the KCRA does not apply to extra-territorial employment discrimination. In *Union Underwear Company, Inc. v. Barnhart*, the Supreme Court of Kentucky held "that the Kentucky Civil Rights Act does not have extra territorial application." 50 S.W.3d 188, 193 (Ky. 2001). Therefore, the only issue remaining in this case is whether Hamade's complaint requests the Court to apply the KCRA extra-territorially.

According to his complaint, Hamade was domiciled in Florida and worked in Iraq at all times relevant to this action. [DN 1 at 1-3]. Hamade was employed in Iraq when Valiant terminated his employment. [DN 1 at 3]. In fact, all of the alleged discriminatory actions occurred in Iraq. [*See* DN 1]. Based on these facts, the Court holds that Hamade is requesting the Court to apply the KCRA extra-territorially.

Hamade does not dispute these facts, but instead cites to the language of an offer letter between Hamade and ABM Government Services, LLC that provides:[5]

> This offer letter is deemed to have been executed and delivered with[in] the state of Kentucky, and the right and obligations of you and ABM shall be construed and enforced according to the laws of Kentucky.

---

[5] Valiant argues that the offer letter should not be considered because it is outside the pleadings, unauthenticated, does not constitute a public record, and is not central to Hamade's retaliation claims. [DN 11 at 5]. Even assuming the offer letter may properly be considered, Hamade's complaint must be dismissed. Therefore, the Court will assume without deciding that the offer letter can be considered.

[DN 9 at 11]. Hamade argues that the offer letter evinces an agreement between the parties to have their employment relationship governed by Kentucky law and that they agreed to confer particular case jurisdiction to this Court. [DN 9 at 11]. Assuming without deciding that the offer letter is authentic, that Valiant is bound by it, and that the Court may consider it in deciding Valiant's motion to dismiss, Hamade's argument is unpersuasive for two reasons.

First, whether Hamade's KCRA claim states a claim upon which relief can be granted is not an issue of jurisdiction. Hamade's complaint alleges that jurisdiction is proper pursuant to 28 U.S.C. § 1332 ("Diversity Jurisdiction") and § 1367 ("Supplemental Jurisdiction"). [DN 1 at 2]. This Court also has jurisdiction over Hamade's Title VII claim pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"). The Court is hearing the KCRA claim—a state law claim—pursuant to Diversity Jurisdiction and Supplemental Jurisdiction. It is immaterial, therefore, whether the parties agreed to confer "particular case jurisdiction" to this Court. The material issues in this case are whether the KCRA extends to extra-territorial employment discrimination, which it does not,[6] and whether Hamade asks this Court to extend the KCRA to extra-territorial employment discrimination, which he does. Because Hamade's complaint requests the Court to extend the KCRA beyond its scope, he fails to state a claim upon which relief can be granted.

Second, the language that Hamade cites to in the offer letter is an agreement to enforce the employment contract pursuant to the laws of Kentucky. Therefore, the KCRA applies to the employment contract between Hamade and—assuming without deciding that Valiant is bound by the offer letter—Valiant. But the language of the offer letter does not change the nature of the KCRA from a law that only applies within Kentucky into a law that applies extra-territorially. The

---

[6] *Union Underwear Co., Inc. v. Barnhart*, 50 S.W.3d 188 (Ky. 2001).

offer letter's language does not expand the scope of the KCRA beyond that which the General Assembly conferred to it.

Because the KCRA does not apply to extra-territorial employment discrimination, Valiant's motion to dismiss is **GRANTED.**

Even if the KCRA did apply to extra-territorial employment discrimination, Hamade fails to state a claim upon which relief can be granted because he did not file a charge or make an inquiry with the KCHR. The Kentucky Supreme Court has not decided whether a plaintiff can state a claim for retaliation under the participation clause of the KCRA when the plaintiff has not filed a charge or made an inquiry with the KCHR. Upon consideration of all relevant legal sources, the Court holds that the KCHR must be involved—even if only through an inquiry about filing a charge—to invoke statutory protection under the participation clause of the KCRA.

Because this Court is applying a state law, "we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "If the state supreme court has not yet addressed the issue" this Court must make a prediction of how the state supreme court would decide the issue "by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). "When trying to determine the relevant content of state law to decide the case before it, a federal district court may consider all of the available legal sources and, when necessary, employ its experience to make an enlightened prediction of how the state's highest court would answer the open questions." 19 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*, § 4507 (3d ed. 2018). The Court may rely on the unpublished decisions of the state's courts even if the state rules of procedure forbid state court's from citing unpublished decisions as authority. *Managed Health Care Associates, Inc. v. Kethan*, 209 F.3d 923 (6th Cir. 2000). The

Court may also consider jurisprudence from other jurisdictions in determining how the state's highest court would decide the issue. *Combs v. International Ins. Co.*, 354 F.3d 568 (6th Cir. 2004).

In *Charalambakis v. Asbury University*, a professor brought a retaliation claim against his employer ("the university") arguing, *inter alia*, that the university imposed probationary discipline on him because he informed the university of his intent to file a civil rights claim. 488 S.W.3d 568, 574, 580-585 (Ky. 2016). In its opinion, the Kentucky Supreme Court identified that the disciplinary proceedings began prior to the professor's statement of intent to file a civil rights claim. *Id.* at 580. The court explained "[t]he chronology of events precludes [the professor] from showing that but for the filing of his civil rights claim, Asbury would not have initiated its disciplinary case against him. Therefore, the initiation of the disciplinary matter cannot be the basis of his claim under KRS 344.280(1)." *Id.* at 583. Furthermore, the court explained that "[t]he timeline negates any possible inference that the disciplinary actions were brought as retaliation for [the professor's] invocation of his rights under KRS Chapter 344." *Id.* at 584 (citations omitted).

The professor also argued that, even if the university did not initiate the disciplinary proceedings in retaliation for his intent to file a civil rights claim, the university terminated his employment in retaliation for participating in an investigation with the KCHR. The professor did, in fact, file a charge with the KCHR prior to his termination. *Id.* at 580. But the Kentucky Supreme Court ultimately held that there was no genuine dispute of fact on the issue of causation. *Id.* at 584-585.The court held that there was no genuine dispute for trial regarding whether a link existed between the professor's termination and the civil rights claims. *Id.* In reaching its decision, the court reasoned that the professor could not prove his civil rights claim was the "but for" cause of his termination because: (1) the university initiated the disciplinary proceedings upon knowledge of allegations which were serious enough to warrant dismissal based upon the employment

11

manual, (2) the disciplinary proceedings predated any indications that the professor would pursue remedies under the KCRA, and (3) the professor violated the conditions of his probationary status, an offense which the professor agreed in writing would result in termination. *Id.* at 584. Therefore, while *Charalambakis* is instructive, it is distinguishable from the matter before the Court and—because the professor filed a charge with the KCHR—does not answer the question of whether a plaintiff may succeed under the participation clause of the KCRA without involving the KCHR.

Federal jurisprudence in the Sixth Circuit also supports this Court's holding that KCHR involvement is a required element of a claim under the participation clause. In *Lewis-Smith v. Western Kentucky University*, the court noted that "[r]etaliation claims under the KCRA are evaluated under the same standard used to evaluate federal Title VII claims." 85 F. Supp. 3d 885, 905 (W.D. Ky. 2015) (affd. Jan. 12, 2016) (citing *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014)). The court in *Lewis-Smith* examined the plaintiff's Title VII claim and KCRA claim together, finding that the alleged unlawful employment action "was not made in connection with or anticipation of any EEOC charge, as required under the 'participation' clause." *Id.* at 905-906 (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003)). The *Lewis-Smith* decision demonstrates that courts in the Western District of Kentucky, and throughout the Sixth Circuit, examine KCRA retaliation claims brought under the participation clause using the same analysis as Title VII claims. Although it is persuasive, the *Lewis-Smith* decision does not establish whether KCHR involvement is necessary for a KCRA participation clause claim for three reasons. First, *Lewis-Smith* is not a decision by the Supreme Court of Kentucky. Second, the *Lewis-Smith* opinion does not specifically address whether KCHR involvement is required but instead only identifies that there was no connection to an EEOC charge in that case. *Id.* at 906-907. And third, the *Lewis-Smith* court ultimately granted summary judgment on the retaliation claim based

on the causation element. *Id.* at 912. The court did not decide whether the plaintiff engaged in protected activity. *Id.* at 908.

In *Stanley v. Insights Training Group, LLC*, the court described the "two types of protected activity: 1) opposition to an apparent Title VII violation, the opposition clause; and 2) participation in a proceeding with the Equal Opportunity Commission ("EEOC") or *Kentucky Commission on Human Rights*, the participation clause." No. 3:09-CV-00231, 2013 U.S. Dist. LEXIS 1428, *19-20 (W.D. Ky. Jan. 3, 2013) (emphasis added) (internal quotation marks and citations omitted). In *Stanley*, an employee was terminated after a complaint had been filed with the United States Department of Labor ("DOL"). The employee, plaintiff Flannery, was terminated based upon considerations that came to light as a result of the DOL complaint. *See id.* "In fact, the company's stated reason for firing [plaintiff Flannery] actually related to her allegedly having helped [plaintiff Stanley] prepare the DOL letter." *Id.* at *25.

To determine whether plaintiff Flannery's participation in the filing of a complaint with the DOL or the internal investigation constituted a protected activity under the participation clause, the *Stanley* court examined the language of both Title VII and the KCRA, finding:

> The KCRA states that it is unlawful for an employer to "[r]etaliate or discriminate in any manner against a person because . . . he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." KRS § 344.280. Chapter 344 of the Kentucky Revised Statutes establishes the Kentucky Commission on Human Rights. KRS § 344.150. The Commission is empowered, *inter alia*, to receive and investigate complaints of unlawful practices, to hold hearings regarding those complaints, and to issue various orders relating to its findings. *See* KRS §§ 344.180, 344.200, 344.210, 344.230, 344.250. Similarly, Title VII states that it is unlawful for an employer "to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. Title VII creates the Equal Employment Opportunity Commission ("EEOC") which is empowered to accept complaints of unlawful employment discrimination,

investigate them, and take various enforcement actions. *See* 42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8.

The language of the participation clause of the retaliation provisions in both the KCRA and Title VII specifically refer to proceedings and charges made under that particular chapter or subchapter, respectively. Thus, the KCRA prohibits employers from retaliating against someone for making a complaint to the Kentucky Commission on Human Rights or participating in an ensuing investigation, while Title VII prohibits retaliation for similar actions with respect to the EEOC.

*Stanley*, 2013 U.S. Dist. LEXIS 1428 at *26-28. The court held that the employee's alleged

involvement in the preparation of a "DOL letter and her participation in the ensuing internal

investigation did not constitute protected activities under the participation clause." *Id.* at 27 (citing

*Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("Accusations made in the context of

charges before the [EEOC] are protected by statute; charges made outside of that context are made

at the accuser's peril.")).

Finally, the Court of Appeals of Kentucky held in a currently unpublished, not-yet final,

opinion that "in Kentucky, the KCHR must be involved even if only through an inquiry about

filing a charge to invoke statutory protection under the participation clause." *Williams v. City of*

*Glasgow*, No. 2017-CA-001246-MR, 2018 WL 3794739, *4 (Ky. Ct. App. Aug. 10, 2018). In

*Williams*, a public affairs officer was terminated from her employment with the police department

after she assisted a police sergeant in printing a text message exchange between two police officers

that contained a nude image of one of the officers. The public affairs officer brought action against

the city for violation of the KCRA. The Public affairs officer—like Hamade—failed to involve the

KCHR in the response to the alleged discrimination. *Id.* The Court of Appeals reasoned that

"Because of the substantial similarity of the respective texts and objectives [of Title VII and the

KCRA], we interpret the civil provisions of KRS Chapter 344, in both the discrimination and

retaliation contexts, consistent with the analogous federal anti-discrimination statutes." *Id.*

(quoting *Charalambakis*, 488 S.W.3d at 575). The court then recognized that the Sixth Circuit

requires EEOC involvement in participation clause retaliation claims brought under Title VII. *Id.* (citing *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 200 (6th Cir. 1986); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). The Court of Appeals therefore held that the KCHR must be involved for a plaintiff to enjoy statutory protection under the participation clause of the KCRA. *Id.*

Upon considering all of the foregoing sources of law, this Court holds that the KCHR must be involved—even if only through an inquiry about filing a charge—to invoke statutory protection under the participation clause of the KCRA. According to Hamade's complaint, the KCHR was not involved in the investigation prior to Hamade's termination. Because the alleged adverse employment action predated any involvement of the KCHR and because Hamade concedes that he cannot state a claim under the opposition clause, Hamade has failed to state a claim upon which relief can be granted pursuant to the KCRA. For the foregoing reasons, Valiant's motion to dismiss is **GRANTED.**

## CONCLUSION

For the foregoing reasons, Valiant's motion to dismiss [DN 6] is **GRANTED.** The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 28, 2019

cc:      Counsel of Record